# United States District Court
### for the
### Western District of New York

| | |
|---|---|
| United States of America <br><br> v. <br><br> ROBERT WILSON <br> REJEANNE COLLIER, | ) <br> ) <br> ) Case No. 11-MJ-676 <br> ) <br> ) <br> ) <br> ) |

## CRIMINAL COMPLAINT

I, __JAMES M. SCHMITZ__, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of __November 9, 2011__ in the county of __Monroe__ in the Western District of New York, the defendant violated __21__ U.S.C. §§ __846, 841(a)(1), (b)(1)(B) and Title 18, U.S.C. § 2__, an offense described as follows: knowingly and unlawfully conspiring to possess with intent to distribute one kilogram or more of heroin and attempting to possess with intent to distribute 100 grams or more of heroin; and knowingly and unlawfully aiding and abetting the commission of an offense.

This criminal complaint is based on these facts:

**SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT JAMES M. SCHMITZ**

X   Continued on the attached sheet.

_____
*Complainant's signature*

SPECIAL AGENT JAMES M. SCHMITZ
*Printed name and title*

Sworn to before me and signed in my presence.

Date: November 22, 2011

_____
*Judge's signature*

City and State: ROCHESTER, NEW YORK

HON. JONATHAN W. FELDMAN, U.S.M.J.
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

Robert WILSON
Rejeanne COLLIER,

          Defendants.

11-MJ-676

**AFFIDAVIT**

---

STATE OF NEW YORK  )
COUNTY OF MONROE   ) SS:
CITY OF ROCHESTER  )

I, James M. Schmitz, affirm to the following facts:

1. I am a Special Agent with the United States Department of Justice, Drug Enforcement Administration (DEA), and am assigned to the Rochester, New York Field Office. I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, Unites States Code, that is an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United State Code, Section 801, et seq. and Title 18, United States Code, Section 2516(1).

2. I have been an agent with DEA since January 2005, and initially received sixteen weeks of specialized training in narcotics investigations at the DEA training academy located in

Quantico, Virginia. I have been assigned to the Rochester, New York Resident Office since July 2005. Since that time, I have participated in numerous cases involving the distribution of various drugs including marijuana, cocaine, crack cocaine, ecstasy, anabolic steroids, and heroin. My participation in these cases has included, but is not limited to, the monitoring and recording of court-ordered Title III interceptions; execution of search warrants; direction of confidential sources; and the debriefing of defendants and others involved in the distribution and consumption of illegal drugs. I am familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, and used within the Western District of New York.

## **PURPOSE OF THE AFFIDAVIT**

3.   This affidavit is submitted in support of a criminal complaint charging Robert WILSON and Rejeanne COLLIER with violations of Title 21, United States Code, Section 846 (Conspiracy to Possess with Intent to Distribute 1 kilogram or more of Heroin); Title 21, United States Code, Section 841 (a)(1), (b)(1)(B) (Attempted Possession with Intent to Distribute

2

100 grams or more of Heroin), and Title 18, United States Code, Section 2 (Aiding and Abetting the Commission of an Offense).

4. The assertions made herein are based solely upon the personal knowledge of your affiant or upon information I have received from this investigation, including conversations and review of reports from law enforcement officers who are involved in this investigation and information from confidential sources involved in this investigation, as well as police reports produced in relation to the arrests of WILSON and COLLIER on November 9, 2011 in Pennsylvania and conversations with at least one of the arresting officers. The factual allegations contained within this affidavit are true and accurate to the best of my knowledge and belief.

### FELONY NARCOTICS TRAFFICKING CONVICTIONS OF WILSON and COLLIER

5. Robert WILSON has the following felony drug convictions:

- April 5, 1994: Convicted upon plea of guilty to Possession of at least 4 ounces but less than 5 pounds of Marijuana, District Court, Belmont, TX;

3

- June 7, 1994: Convicted upon plea of guilty to Unlawful Possession of Marijuana First Degree, 6th Circuit Court, Tuscaloosa County, AL;

- April 8, 1997: Convicted upon plea of guilty to Possession with Intent to Distribute Marijuana, 14th Judicial District Court, LA.

6. Rejeanne COLLIER has the following felony drug convictions:

- June 10, 1993: Convicted upon plea of guilty to Criminal Possession of a Controlled Substance in the Fourth Degree, Monroe County Court, Rochester, NY;

- March 18, 1994: Convicted upon plea of guilty to Criminal Possession of a Controlled Substance in the Second Degree, Monroe County Court, Rochester, NY; and

- December 17, 2001: Convicted upon plea of guilty to Criminal Possession of a Controlled Substance, in the Third Degree, Monroe County Court, Rochester, NY.

## **CONFIDENTIAL SOURCE/FIF INFORMATION**

7. Since at least 2005, the Rochester Police Department (RPD) and the DEA have had multiple investigations into the heroin and cocaine trafficking of Rejeanne COLLIER. COLLIER is a well-known source of supply for both heroin and cocaine on the west side of the City of Rochester. This investigation has utilized multiple confidential sources and information obtained

4

from Field Interview Form (FIF) Information. Some of this information is set forth below.

8. On October 13, 2007, Rochester Police Officer Brady and Officer Adorante were contacted by Kathy Betlem from Betlem Heating and Cooling. Ms. Betlem stated they received a call from Regina COLLIER who resided at 1 Karges Place for the upstairs apartment not having heat. Betlem employee James Knapp stated he checked the flue for the upstairs furnace and found a white sock stuffed inside the flue. The sock contained approximately 218 bags of suspected heroin.

9. On August 6, 2008, DEA Agents conducted a controlled purchase of heroin from an individual (CS 1) they later arrested for possession with intent to distribute heroin. After waiving his/her rights, CS-1 spoke to agents during a post-arrest interview. CS-1 stated that for the last two years, CS-1 has been supplied approximately 30 bundles of heroin per week from Rejeanne COLLIER. According to CS-1, COLLIER's source of heroin was in New York City. CS-1 stated the heroin is pre-packaged from New York City.

10. On April 29, 2009, a confidential source (CS-2) was interviewed by Rochester Police Department Investigators Norbe Torres and David Franklin. CS-2 stated that Regina COLLIER distributes heroin to several Jefferson Avenue drug dealers and primarily hangs out at a bar at 717 S. Plymouth Avenue, which is located on Plymouth Avenue at Columbia Avenue. According to CS-2, COLLIER gets her heroin already pre-packaged from New York City and she purchases $30,000 worth of heroin on each trip. COLLIER drives a Gray Chrysler 300 and a Blue Honda Civic.

11. During the Summer 2011, an anonymous letter from a concerned citizen was received by RPD Chief Shephard advising that The Renaissance Club located at Plymouth Avenue and Columbia Avenues has several drug dealers present. The letter stated that Regina COLLIER of 19 Chandler Street drives a silver Chrysler 300 and had just purchased two kilograms of cocaine and 500 bundles of heroin. The letter stated that COLLIER sells the heroin for $90 per bundle, and that COLLIER purchases large quantities of drugs two times per month. In November 2011, while conducting surveillance, your affiant on two occasions observed a silver Chrysler 300 bearing New York registration EHC-9556 at 19 Chandler Street. A computer check of the New York State

Department of Motor Vehicles indicated this vehicle is registered to Rejeanne COLLIER at 121 Spruce Avenue Rochester, New York.

12. On November 16, 2011, a confidential source (CS-3) spoke with RPD Investigator David Simpson. CS-3 stated that CS-3 has known Rejeanne COLLIER for four years. During this time, CS-3 has known COLLIER to sell heroin and to supply other heroin dealers on Jefferson Avenue. CS-3 has personally observed COLLIER with heroin and knows that COLLIER travels to New York City each month to purchase large quantities of heroin.

## SEIZURE OF 12,000 PACKETS OF HEROIN FROM WILSON and COLLIER

13. On November 9, 2011, at 3:25 PM, uniformed Pennsylvania State Police Troopers (Tprs.) Nick Cortes and Mark Conrad were performing a radar duty on I-80 west in Pocono Township, Monroe County, Pennsylvania. Tprs. Cortes conducted a traffic stop of a red Chevrolet Impala after observing the vehicle traveling at 68 miles-per-hour in a 55 mile-per-hour zone.

14. Tpr. Conrad approached the driver, who identified himself by a New York driver's license at Robert L. WILSON, 498

Hayward Avenue, Rochester, New York.  The passenger identified herself by a New York driver's license as Rejeanne D. COLLIER, 121 Spruce Avenue, Rochester, New York.  WILSON informed Tpr. Conrad that the Impala was a rental vehicle and provided Tpr. Conrad with the rental agreement.  When WILSON handed the trooper the rental agreement, WILSON's hand was shaking.  WILSON's speech was slow and slurred and he appeared extremely nervous.  According to the rental agreement, WILSON was not an authorized operator of the vehicle, and the vehicle was not permitted to travel outside of New York State.

15.  Tpr. Conrad conducted a driver's license and criminal history check on WILSON and learned that WILSON had an extensive criminal history, which included possession of controlled substances.  (See Paragraph 5, above).  Tpr. Conrad requested WILSON exit the vehicle where Tpr. Conrad advised WILSON of the rental agreement violations.  WILSON advised Tpr. Conrad that the vehicle was rented by a third party who was not present.  WILSON advised Tpr. Conrad that on November 8, 2011, WILSON and COLLIER drove from Rochester, NY to Tannersville, PA, where they rented a room at the Best Western hotel by the Tannersville Outlet Mall.  WILSON stated they were now returning to Rochester, New York.

Tpr. Conrad asked WILSON if they had traveled to New Jersey or New York City, and WILSON indicated that they did not go there.

16. Tpr. Conrad then spoke with Rejeanne COLLIER, who provided travel plans that conflicted with those provided by WILSON. COLLIER advised that COLLIER and WILSON traveled from Rochester, New York to New Jersey and rented a room at the Best Western hotel in Fort Lee, New Jersey.

17. Tpr. Conrad conducted a criminal history check of COLLIER and learned that she also has an extensive criminal history, which included drug distribution in Rochester, New York. (See Paragraph 6, above).

18. Tpr. Conrad began talking to WILSON outside by the police vehicle when COLLIER exited the Impala and walked over to them. COLLIER placed her arm around WILSON and said, "I told him we stayed in Ft. Lee." Tpr. Conrad had COLLIER sit back inside the Impala and he requested permission from WILSON to search the Impala. WILSON granted permission to search the Impala. Tpr. Conrad presented a waiver of rights and consent to search form to WILSON, who stated he did not feel comfortable signing the form, but gave permission to search the Impala.

9

19. At that time Tpr. Cortes arrived for assistance. Tpr. Conrad had COLLIER exit the Impala inquired if COLLIER had anything illegal or of value in the vehicle such as large amounts of money. COLLIER denied having anything illegal or large amounts of currency. While Tpr. Conrad was speaking with COLLIER, he noted her speech appeared sluggish and lethargic and she appeared to be under the influence of a controlled substance. Tpr. Conrad retrieved COLLIER's jacket from the back seat of the Impala and Tpr. Conrad discovered a large quantity of U.S. Currency in various bundles, which were rubber banded and bundled in a manner consistent with drug trafficking. Tpr. Conrad asked COLLIER is she had a large amount of money and she stated no. Tpr. Conrad showed COLLIER the bundles of money and COLLIER denied that the money was hers. Tpr. Conrad asked COLLIER how much money was there and COLLIER first stated she did not know and then she stated $4,000. COLLIER advised the money belonged to her nephew and that she went shopping with it. Tpr. Cortes located another bundle of $1,000 in U.S. Currency in COLLIER's purse.

20. While searching the trunk of the Impala, Tpr. Cortes located a red and black gym bag containing four black plastic

10

bags containing 1,200 bundles of a substance which field-tested positive for the presence of heroin. The bundles contained 10 packets of heroin each estimating approximately 12,000 packets of heroin in total.[1] In the trunk, there were also toilet seats and green plastic bags marked "Paramount Decorations."

21. Both WILSON and COLLIER were taken into custody, and were advised and waived their Miranda rights. At 5:30 PM, Tprs. Conrad and Cortes interviewed COLLIER at the Pennsylvania State Police, Swiftwater station. COLLIER stated she was just going shopping and that in New York City, she and WILSON went their separate ways. COLLIER stated that she went shopping in the City without WILSON and bought some toilet seats. COLLIER stated she and WILSON met up again and WILSON put all of COLLIER's bags into the trunk. COLLIER could not explain how she and WILSON met up again or where WILSON was while she was shopping. COLLIER stated the money in her jacket belonged to her nephew, but she refused to provide the nephew's name or phone number. COLLIER denied having any other money in her purse despite Tpr. Cortes finding the additional bundle containing $1,000 of U.S. currency.

---

[1] The aggregate weight of the heroin (with packaging) was approximately nine (9) pounds. In my training and experience, a typical deck of heroin in Rochester weighs .06 grams. 10 decks per bundle therefore weighs 0.6 grams. 1200 bundles, therefore, contains approximately 720 grams of heroin.

COLLIER stated she was not giving the troopers any additional information because she knew the troopers were going to seize the money since the troopers believed it is tied to drugs.

22.  At 10:35 PM, Tprs. Conrad and Cortes interviewed WILSON at the Pennsylvania State Police, Swiftwater Station.  WILSON advised that his sister rented the car for him and COLLIER on November 8, 2011.  WILSON stated he and COLLIER went to New York City and stayed overnight at the Best Western hotel in Fort Lee, New Jersey.  WILSON stated that the next day he was supposed to meet a male in Harlem, New York to pick up heroin.  WILSON stated the male called COLLIER's phone to set up the meeting.  After the call, WILSON and COLLIER drove to 125th Street in Harlem and they went shopping together.  WILSON stated he and COLLIER were together the entire time and the only item he purchased was one of the toilet seats.

23.  WILSON stated when he and COLLIER returned to the Impala together, they put the bags in the trunk.  WILSON then told COLLIER he had to go take care of business which, according to WILSON, COLLIER knew to mean WILSON was going to pick up the heroin.  WILSON stated he dropped COLLIER on a street corner just around the corner from where he met his source.  WILSON stated

12

that he met the source and followed him in his car for about fifteen minutes. WILSON stated they parked next to each other and his source went to retrieve the heroin. WILSON stated the source then called WILSON's phone and advised that the source was on his way with the heroin. WILSON stated he returned to his car and the source arrived. WILSON stated he popped open the trunk and the source put the package in the trunk. WILSON advised that he knew it was heroin, but he did not know how much heroin was in the bag. WILSON stated he returned to the street corner and picked up COLLIER. WILSON stated COLLIER knew he picked up the heroin because she knows what WILSON does. WILSON advised they were on the way back to Rochester, New York with the heroin. WILSON stated he was to deliver the heroin to a male only known as "Benny RAY." WILSON stated he was already compensated two bundles of heroin and a couple hundred dollars for doing the delivery.

## SEARCH WARRANT EVIDENCE

24. On November 14, 2011, Greater Rochester Area Narcotics Enforcement Team (GRANET) Investigators Martin Logan and David Simpson executed a state search warrant at COLLIER's residence located at 19 Chandler Street, Rochester, New York. In the top

floor bedroom, officers located two digital scales (one of which had white residue on it) in a black bag and $1,700 US currency inside a purse on the floor. Inv. Simpson also located a clear plastic tub that contained a green bath mat, a new brown toilet seat still wrapped in plastic, and two green plastic bags, which were labeled "Paramount Decorations." Inv. Logan seized these items as evidence.

25. Your affiant conducted an internet check of the Google website for "Paramount Decorations in Harlem, New York." Paramount Decorations is located at 124 W. 125th Street Harlem, New York.

## **CONCLUSION**

26. Based upon my training and experience and knowledge of this investigation, it is my opinion that the individuals charged herein conspired to possess with intent to distribute heroin, and to distribute heroin, in the Western District of New York. This opinion is based on: (1) my training and experience in heroin investigations; (2) conversations with other experienced narcotics officers; (3) the large quantity of heroin, which is far in excess of amounts consistent with personal consumption,

the defendants' possessed November 9, 2011; (4) the manner in which the heroin was pre-packaged for distribution in small, individual resellable amounts; (5) the simultaneous presence of large quantities of bundled cash, which is consistent with how narcotics traffickers transport the proceeds of drug trafficking; (6) the confidential source/FIF information; (7) the defendants' extensive prior experience in narcotics trafficking; (8) the statements made by the defendants, including (a) their initially conflicting stories about their travel plans in order to disguise the purpose of their trip; (b) WILSON's subsequent admissions concerning (i) their joint possession of the heroin, and (ii) their intent to return to Rochester to deliver the heroin to "Benny Ray;" and (9) the presence of digital scales, and U.S. currency at COLLIER's residence on November 14, 2011.

27. Accordingly, I submit there is probable cause to believe that Robert WILSON and Rejeanne COLLIER have violated Title 21, United States Code, Section 846 (Conspiracy to Possess with Intent to Distribute 1 kilogram or more of Heroin); Title 21, United States Code, Section 841 (a)(1), (b)(1)(B) (Attempted Possession with Intent to Distribute 100 grams or more of

Heroin), and Title 18, United States Code, Section 2 (Aiding and Abetting the Commission of an Offense).

_____
James M. Schmitz
Special Agent
Drug Enforcement Administration

Sworn to and subscribed to before me this 22 day of November 2011 at Rochester, NY.

_____
HON. JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE